The case is New World International and National Auto Parts v. Ford Global Technologies and Ford Motor Company, 2017-1956. Mr. Oak, get ready when you are. Good morning, Your Honors. May it please the Court, may I proceed? Yes. Mr. Oak, is the motion for sanctions in this case still ending? Yes, Your Honor, it is. It's a cross motion for sanctions. On what are you basing your statement that the 2015 actions dismissal was without prejudice? It was a dismissal for lack of personal jurisdiction. And a dismissal for lack of personal jurisdiction under Fifth Circuit law is a dismissal without prejudice. You're only arguing that the, quote, final judgment on the merits requirement, which is element three of plain preclusion, is not met, right? Correct. Okay. So you agree if we review this case under plain preclusion, there's the same cause of action, the same parties in a court of competent jurisdiction. So the other three are there. Well, there are different parties. Ford Motor Company was sued in the amended complaint and there's a successor and interest argument there where Ford Global then steps into the shoes of Ford Motor Company. Now there's, I guess there's a privity argument there, but there is a different party and there's also different patents involved in the amended complaint. We agree with your, that your first case was dismissed without prejudice. There's case law from the D.C. Circuit that states that doesn't matter for purposes of fining race judicata, e.g. Dozier versus Ford Motor Company. What's your response to that? The rule is different in the Fifth Circuit and that is not a claim preclusion issue, that is an issue preclusion issue. It's the so-called curable defects. In some of the circuits... How do we distinguish Comer then, if you do your issue preclusion? Well, Comer, the Comer case was based on subject matter jurisdiction and so it was dismissed with prejudice. So the Comer case is relevant to a claim preclusion argument. Assuming we agree with you that race judicata is the wrong phraseology here because I think everybody recognizes that sometimes these things get mushed, but that race judicata always needs a final judgment on the merits. I think that's a given and that I think it just was sloppy for all these cases to, and if you look in Wright and Miller and everything else, they'll say that there's, we need to stop conflating these two questions. But assuming we're doing issue preclusion and whether we agree with it or not, it appears that there are cases in the Fifth Circuit that say that issue preclusion can apply to a personal jurisdiction dismissal without prejudice, meaning a non-merits dismissal. That's correct. Issue preclusion potentially can apply in the Fifth Circuit, but in the Fifth Circuit, there must be an identity of facts that were actually litigated and that support the judgment in the Fifth Circuit, and that's not what we have here. Well, issue preclusion is an equitable principle, right? Pardon me? Issue preclusion is an equitable principle. I believe that's correct, yes. Couldn't courts barely say that we don't want you to keep coming back every month with a new set of jurisdictional facts, and we dismiss for lack of personal jurisdiction. So go take it somewhere else. And that's really the dynamic and the tension that's underlying a lot of what happened here. And I would say that I agree that it's an interest of the court to not have litigants coming back and back and back. And that is particularly true with claim preclusion when you have a final judgment on the merits, like summary judgment, and you've gone through the entire litigation process, invested all this time. But the dynamic is different when you have, at the beginning of the case, when you're trying to get into court. There's really no motivation for a plaintiff to try not to get into court and make seriatim arguments. But you could address the merits of your arguments in a different form, could you not? Potentially, I could. Of course you could, right? I mean, that's what dismissal without prejudice means, is that on lack of personal jurisdiction, you can assert it somewhere else, just a different form. Yeah, so I would also argue that on a dismissal without prejudice, the cases say, if you cure the defect, you can also address it in the court that dismissed it. And what is the prejudice to you from having to have a different form address this question? Well, it would be potentially Michigan, and parenthetically, if I could just... I've got a lot of friends in District Court of Michigan. I think they're fine judges. Your Honor, and I'm not questioning the integrity or quality of the judges in Michigan. In fact, Judge Michelson just made some rulings, and she's a very professional, hardworking judge. I have no quarrel at all with the judges in Michigan. But it's a matter, given the facts of this case, and if I could... I wanted to start by briefly updating the court on other relevant facts or litigation. The case where Ford Global sued New World, that was up in Michigan, has been transferred down to the Northern District of Texas under T.C. Heartland. Those are 13 patents, Ford Global versus New World, transferred from Michigan down to the Northern District of Texas, now in front of Judge Godby. Also, the related litigation where the Automotive Body Parts Association, that I also represent, sued Ford Global to challenge these Ford design patents based on functionality and patent exhaustion. We've received an order and a judgment from Judge Michelson in Michigan, where she denied Ford's motion that the case is moot, and granted their summary judgment on these issues. Now the case is on appeal before this court, and the briefs are due in April. Are these individual patents at issue anywhere right now, other than your effort to get them to be at issue here? Yes, they are at issue in the ABPA versus Ford Global case. The 299 and 685 patent, two of the five patents are at issue in ABPA versus Ford Global. The ones that are now in Texas? No, the ones that are the subject to the Michigan action that are now in this court. The larger case is now down in the Northern District of Texas, so we think it would be appropriate now to keep this case in the Northern District of Texas as well. On the issue of claim preclusion, I think we've talked about that, but there wasn't a final judgment on the merits, so we say claim preclusion does not apply. Really, the only way Ford can make the argument that it does is in its brief, it quotes Comer and says, claim preclusion applies to jurisdictional dismissals, both subject matter and personal. But that's not what Comer says. Comer says race judicata, and we have this confusion in the case law. Does race judicata mean claim preclusion, issue preclusion? Judge O'Malley has tried to focus you on issue preclusion. Okay, thank you, Your Honor. Okay, with regard to issue preclusion, the issue is, or the two points here, two key concepts. What is the issue that is being precluded, and does it make a difference if facts were already available under this curable defect exception? So, we've talked about what the test is on issue preclusion, must be identical facts, and the legal standard must be the same, must be actually... Why do the facts have to be identical? If the issue is actually presented, fairly adjudicated, and resolved, the fact that you might not have discovered additional facts or disclosed additional facts to the court, I don't know that that would affect the preclusive effect of the ultimate decision. Well, in this case, Ford is making the argument that the issue is whether Ford is subject to personal jurisdiction in Texas. They define the... That's too broad. It doesn't make sense to do it that way. But isn't the issue whether... Ford, go on. LKQ's contacts with New World constitute sufficient contacts to provide personal jurisdiction? Your Honor, LKQ is the exclusive licensee of Ford Global, and we have made allegations that they're cooperating, working in concert with one another in doing that. Right, and so that's what you argued the first time around, right? The first time, the basis for the personal jurisdiction was the exclusive license agreement coupled with the cease and desist letters. All right, so you're saying that the actions of LKQ and Ford Global, to the extent that Ford Global had entered into this exclusive license agreement, were what was the basis for your argument for personal jurisdiction, right? Exclusive licensing agreement. This time it's different. This time it's enforcement efforts and efforts to protect the patents and also contacts with the suppliers to not supply the products anymore. Those issues, those factual issues, were not litigated in the 2015 action. But were they known by you at the time? They were known. They were known. Well, you know, here we have another ambiguity. What is the test for on the curable defects exception? What time period do you look at? Do you look at during the litigation, before the order of dismissal, or before the complaint was filed? The cases say different things. It's important because in this case we're talking about personal jurisdiction. Personal jurisdiction is determined at the time that the original complaint was filed. And here we have facts that were alleged to have occurred after the original complaint was filed. And so the court couldn't have looked at those facts in evaluating the personal jurisdiction.  Well, did you appeal the district court's denial of your motion to amend? You did, right? Yes, it was denied. In her discretion, she denied it. She denied my motion to amend. In her discretion, we appealed it to this court, and this court affirmed the dismissal, saying it was not an abuse of discretion. So it was a different standard, a standard and standard of review on appeal. But here we have the facts are that we have a single phone call in March from Ford Global to New World, and then we have the lawsuit filed in April. And then two months later in June, we have a follow-up phone call from another person who now begins to talk about an ongoing business relationship and follows that up with two additional emails. So those are facts that occurred after the complaint was filed and could not have been considered by the court. Even though we put it in the amended complaint to tell the full story, those facts could not have been considered in the 2015 actions. You're into your rebuttal time. You can continue if you'd like or save it. Pardon me? You may continue into what is actually your rebuttal time, or you can save it as you wish. Okay. Is this 218? You have 218 left. Oh, that's my rebuttal time. I'll save my rebuttal time. Mr. Morava. Thank you, Your Honor, and may it please the court. Sean Morava for Ford Global and Ford Motor Company. Whether you call it issue preclusion or claim preclusion, New World's argument today is this, that it can escape the preclusive effect of this court's holding in New World 1 that its amended complaint was untimely and should not have been allowed to be filed by simply filing the amended complaint under a new document. Well, all we said was that she didn't abuse her discretion in not allowing the amended complaint. But unfortunately for you, when she didn't allow the amended complaint, she never said it would have been futile. That's right, Your Honor. But the mere fact that the district court held and this court affirmed that it was inexcusably untimely to amend the complaint in that way, to suggest that if you just take the complaint and say, well, I'm not amending it here, I'm just filing a new action over there, and that somehow solves the preclusion, that's not the law in the Fifth Circuit and it's not the law anywhere else. Well, when you say whether you call it race to claim preclusion, I think that's important, actually, because all these cases are a mess. And reference to race judicata, where there is no judgment on the merits, is just not correct under any interpretation of the law. You know, Judge Amele, I think Comer addresses this exactly. When, you know, I agree that Comer, I think, talks about race judicata in the claim preclusion sense, right? And what Comer says is, although a jurisdictional ruling is technically not on the merits, it has long been the rule that principles of race judicata apply to jurisdictional determinations, both subject matter and personal. So it acknowledges, you know what, it's technically... But it's not right. It's not right. Comer's saying it's not wrong in the rule that race judicata applies to anything other than decisions on the merits. So the cases that you're citing, perhaps their language is just sloppy, terribly sloppy. But the only possible way that this is correct is if it's a claim preclusion analysis. I think if the district court's analysis is correct, whether it's claim preclusion or issue preclusion, but I think... Well, no, you're not. It's not. I mean, you're never going to convince me of that, because this is basic 101 jurisdictional stuff. Race judicata is a totally different animal than claim preclusion. Well, race judicata, I think, back in the bad old days, could sometimes be referred to what's called true race judicata, which we would call claim preclusion today. And then there's sort of this bad race judicata that was basically issue preclusion. And I think what the Fifth Circuit says, you know, and it says it in Comer, and it says it in Boone again, it says, although dismissal of a complaint for lack of jurisdiction does not adjudicate the merit so as to make the case for race judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims. So I think when I say it doesn't really matter sort of what label you put on it, I think the best reading is the one the district court had, which is that in the Fifth Circuit, this is a kind of claim preclusion with an understanding that it's not technically on the merits, but it's on the merits of the jurisdictional assertions. And I think the importance of calling it claim preclusion in this sense is that it has a raised or could have been raised requirement. In other words, the judgment in the first action forecloses things that were raised or things that could have been raised. Issue preclusion doesn't have that, right? That's right, and that's why I think you have to read Comer under the claim preclusion lens, because Comer is very explicit. I mean, when it marches through the issues, the prongs of what it's considering... ...require that the actual issue be decided, right? Well, claim preclusion is the things that were decided or things... So it's the things that were decided or things that could have been decided had they been raised in a proper manner. So the thing that was decided... What's your case law support for that proposition? I think all of the Fifth Circuit... I mean, I think Comer stands for that. I think the Texas test prep case stands for that. It is the things that... Anything in the restatement supports any of this? Oh, sure. Well, I think that's when you sort of transition over to issue preclusion. I mean, let's talk issue preclusion judgment. Right, that's what I want to talk about. I'm trying to ask you to do that. I think I wanted to stand up for the district court. Right, but it's a lot easier to keep confusing the two principles than to focus on the one, because issue preclusion does not talk about what was raised or could have been raised. It talks about what was decided. It talks about what was decided, but I think if you look... If you look at the USS Group case from the D.C. Circuit, I mean, it's this case. It is this case in all the particulars. It's a case where you have a personal jurisdiction argument rejected. They come in and say, please reconsider under this new theory I thought of. District court says, no, it's untimely. Was that a new legal theory or a new fact theory? It was a new legal theory. It was a new legal theory, which is very different than a new set of facts. But it's a new set of facts that were available to New World that the district court found was available to New World in New World I, which is why the district court denied leave to amend. And it's what this court held was why denial of leave to amend was not an abusive discretion, that these facts were available to you and should have been brought to the court's attention earlier. So, I mean, that's what this court said in New World I. And I think, ultimately, what New World is trying to do is collaterally attack the determinations that were made in New World I. This was argued as part of New World I, and it was rejected. So, you know, even if you call it... So all the courts that address this under the issue preclusion lens, and I think part of it, Judge O'Malley, is perhaps the Fifth Circuit is unusual in saying that this is claim preclusion with a loosening of the on-the-merits requirement, as opposed to courts like the Seventh Circuit, the D.C. Circuit, that say, well, it's issue preclusion, but when we say issue preclusion, what we mean is not just the particular arguments you brought, but also the arguments that were available to you and that you could have brought. So that is the difference. And what I'd also say, Judge O'Malley, is that the facts, the operative facts here, are not just the phone calls versus the letters versus the licensing agreement. It's that Ford Global is allegedly trying to enforce its patents in Texas against New World, or is threatening to do so. And so all of that was wrapped up in New World I. And again, I think it would be quite unusual to say that New World could just get around New World I, where the complaint in this case is identical, more or less, to the proposed amendment complaint in New World I. To say that instead of amending New World I, they just open a new docket number, and that somehow solves the whole process, I don't know of any court that has ever held that. In fact, I don't think... Well, that's usually what without prejudice means. Well, I think there's a difference between... Take another shot. Well, there's a difference between without prejudice and without leave to amend. Without leave to amend means this case is over. Without prejudice simply means what, again, Boone says, which is it's not a resolution of the merits of the declaratory judgment claim. So we agree that they can go to Michigan... So that's a different argument than your argument is, but if they had come up with facts that weren't already part of the motion for leave to amend, we'd have a different animal. And if they weren't available during New World I. So if they said, you know what, Ford Global yesterday made a call to Texas and threatened and did all the things, so it's not part of the New World I nucleus of facts, yes, preclusion might be different then. So we're not saying that if the facts change, they can't bring a new lawsuit, of course, because that would be different... But they have to be presented competently. Yes, they do. And I think that gets to our alternative merits argument that the district court recognized here, which is that even if you looked at the amended complaint from New World I, and the complaint in this case, it's still not enough to get personal jurisdiction over anyone. As for Ford Global, the alleged phone calls to the suppliers, because everything else is basically settlement conduct or cease and desist letters, all of that is not alleged to have been made to Texas. And under the rule that this court stated in Radio System and Advance and Huntsville, calls to other people, so to places outside of Texas, do not create contacts inside of Texas. So that solves the phone calls to the suppliers thing. And then as a Ford Motor Company, the only thing that they have pleaded, it's appendix page 31, paragraph 8, is that Ford, FGTL, and LKQ have, quote, engaged in multiple extrajudicial efforts in and directed towards Texas against plaintiffs. That's a legal conclusion. That's not facts. And in fact, when they get to the facts about these collusion, they say that, quote, the cooperative actions of FGTL and LKQ, Ford isn't part of it anymore, at appendix page 42, paragraph 56. So even if you wanted to get past all of the preclusion things we've been talking about, they still don't have enough on the merits of the personal jurisdiction issue. So if, Judge O'Malley, if you think this is confusing and mushy, you don't even have to solve it because even if you get past preclusion, they still don't have enough on the underlying personal jurisdiction claims. And then finally, there's an argument that they need jurisdictional discovery. As to FGTL, they admit that requires holding for them essentially both on preclusion and as to the prima facie case. And then as to Ford, they say we need more discovery about what they did. But of course, the Fifth Circuit requires at least a preliminary showing of personal jurisdiction and simply alleging what is the equivalent of there's personal jurisdiction over Ford in Texas isn't enough. So for all those reasons, we believe the district court's decision should be affirmed unless the court has further questions. Thank you, Mr. Murata. Mr. Oak has a couple of minutes of rebuttal time. Your Honor, I'll be brief. Counsel conceded that if we had new additional facts that occurred after the original complaint, that we'd have something new to look at. That's what happened. We had the additional contacts that occurred after the- What is that, the record, please? May I have a moment, Your Honor? You have a minute and 55. It is in the complaint. Do you have a supporting affidavit? Do you have a supporting affidavit? Let's see, Your Honor. I think it's in the- I believe it's just in the complaint, but you do have- There is an affidavit at Appendix 49. Is that what you're looking for? And actually one before that? 47 and 49? Yes. Thank you, Your Honor. So when we get to that affidavit, how is that possibly competent? There's no foundation? It's vague? Let me- Both my father, Peter Tsai, and I have had communication with officers. Who would that be? What's your foundation for that? Who, what, when, where, why? Well, I'm referring to Paragraph 4, Your Honor. So am I. Victor Cassini, the Senior Vice President, General Counsel, and Corporate Secretary- Wait, Paragraph 4? Pardon me? 4. 4. Uh-huh. Appendix 47. Okay, that's a prior affidavit. Okay. Victor Cassini, the Senior Vice President, General Counsel, and Corporate Secretary of LKQ called me in Irving, Texas on June 3rd, 2015, and he goes on to say exactly what he talked about. And Paragraph 5? We're not relying upon- You admit that's incompetent. Well, that doesn't have a date. That doesn't have- Or a person, or the content. Correct. Correct, but Paragraph 4 is specific and it has a date that's, and that's crucial because under this court's case law, in the Xilinx case, if you have these continuing negotiations concerning perhaps setting up a business relationship, that establishes the requisite minimum contacts under personal jurisdiction. That goes, that is in addition to the original cease and desist letters. In the Xilinx case, you had two trips into the forum that involves settlement negotiations and licensing. Here we had, this June makes the second one, and this one, again, it's critical because you're beginning to talk about a business, a long-term business association. So, the argument is that that supports the minimum contact shifts the burden to Ford than to prove it's unreasonable. I question the relevance of that, but that's fine. Do you have any final comment and rebuttal to opposing counsel's argument? You immediately got a question when you stood up. I'm just asking whether you have a rebuttal comment to what you heard. Well, the rebuttal, primary rebuttal comment is that, well, I believe I've covered it. All right. With regard, well, I will say on the jurisdictional discovery, to the extent the supplier information, we believe it's adequate, but to the extent it's not, I think that forms a basis for additional jurisdictional discovery. Thank you. We'll take the case on revising. Thank you, Your Honor. It's been a pleasure. All rise. The court is adjourned. Date today.